IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 10-cv-01426-LTB

MILTON E. COSBY,

      Plaintiff,
v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.

___

ORDER
___

Plaintiff, Milton E. Cosby, acting *pro se*, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for Supplement Security Income ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

### I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his application for SSI filed in September 2006. [Administrative Record ("AR") 99] After the application was initially denied, an Administrative Law Judge ("ALJ") conducted an evidentiary hearing on August 20, 2008, and issued a written ruling on September 9, 2008. [AR 10-17] The ALJ denied Plaintiff's application on the basis that he was not disabled because he retained the residual functional capacity to perform a significant range of work at the light level of exertion, with

additional restrictions, which existed in significant numbers in the national economy (Step Five). [AR 10] The SSA Appeals Council subsequently denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 1] *See* 20 C.F.R. § 416.1481. Plaintiff timely filed his *pro se* complaint with this court on June 14, 2010, in which he seeks review of the Commissioner's decision.

## II. FACTS

Plaintiff was born in June of 1958, and was less than 49 years old on the date he filed his application for SSI benefits. [AR 23, 75] He had a high school education and some additional college education. [AR 23, 108] His past relevant work history was as a roofer. [AR 44, 90] Plaintiff alleged that he became disabled on February 26, 2006, due to a herniated disc, back injury and sciatic nerve (injury) along his leg. [AR 89]

The medical records in this case commence on August 16, 2006, when Craig Rabb, M.D., performed a microdiscectomy on Plaintiff's L5-S1 spine for treatment of a herniated nucleus pulposus at that level, and to help Plaintiff's associated complaints of a five-month history of right-leg weakness and decreased sensation of the right lateral foot. [AR 141-142, 151-152] At the follow up three weeks later, Dr. Rabb reported that Plaintiff was not having much pain preoperatively, but that was not surprising as the surgery was actually performed to facilitate recovery of his right S1 radiculopathy and strength. [AR 140] Dr. Rabb recommended physical therapy for purposes of strengthening his right lower extremity and directed that future follow-up could be with his primary care physician. [AR 140] Plaintiff participated in physical therapy through November 2006. [AR 135-136, 174-181, 183-185] He was seen in follow-up by nurse practitioners, Susan Holligan and Jack Moore after the surgery. [AR 137-139]

The record does not reflect that Plaintiff received any medical treatment between December 2006 and October 2007; Plaintiff was seen by Mr. Moore, in October 2007, but this visit appears to have not involved treatment but, rather, was for purposes of completing a Med-9 form. [AR 14, 172-173, 193-194]  The record contains no medical treatment records in 2008. [AR 14]

In August of 2008, Ms. Holligan wrote a letter on Plaintiff's behalf, indicating that he "has struggled with low back pain and right lower extremity sciatica symptoms including decreased sensation, persistent numbness, pain and weakness of his right lower extremity," and that his August 2006 surgery did not improve his symptoms as he has continued "confirmed radiculopathy."  She indicates that Plaintiff "reports that he is unable to sit, stand or walk for any length of time" and "has to lay down at least 15 minutes every hour."  It is her opinion that Plaintiff "is honest with his concerns and that his medical problems procluded [sic] him from sustaining a regular job." [AR 202]

Also in August 2008, a state medical expert and orthopedic specialist, Tony LoGalbo, M.D., reviewed Plaintiff's medical records and completed a Medical Source Statement Of Ability To Do Work-Related Activities (Physical). [AR 195-200]  Dr. LoGalbo's review of the medical records indicated that Plaintiff's ability to do work-related activities are limited by his intermittent sciatic symptoms. [AR 195-200]  Dr. LoGalbo opined that Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. [AR 195]  Dr. LoGalbo also opined that Plaintiff could stand for four hours in an eight-hour workday, walk for three hours in an eight-hour workday, and sit for six hours in an eight-hour workday. [AR 196]  He also determined Plaintiff could frequently work at unprotected heights, operate a motor

vehicle, and work around environmental conditions such as humidity, dust, fumes, odor, and extreme heat, but could only occasionally tolerate extreme cold or vibrations. [AR 199]

At the hearing, Plaintiff testified that prior to his surgery in August of 2006, he had pain in his leg at a level of 10 (on a scale of 1-10), but that it was relieved by the surgery so that it was about a level of 1 in December of 2006. [AR 30] He further testified, however, that his pain would increase to a level of five when he stood for about an hour, or sat for about 30 minutes. [AR 31-2] In addition, he could only walk about three blocks before it became necessary to stop. [AR 32] He further testified that he believed that could lift 50 pounds ten times in a day, or 20 pounds twenty times a day. [AR 32-33, 39] He testified that his normal day consisted of six or seven hours of watching television, while lying on his back, and that he only rarely leaves the house. [AR 34, 40] He cleans his own room, including vacuuming, and sometimes does his own grocery shopping, but that his girlfriend does his laundry although he would if he had the facilities. [AR 35-36] He testified that he uses a cane if he has to walk a lot for support to his leg and foot. [AR 41]

### III. LAW

Title XVI of the Social Security Act provides SSI benefits to individuals suffering from a long-term disability and who have income and resources below specified amounts. 20 C.F.R. § 416.110(a). A five-step sequential evaluation process is used to determine whether a claimant is disabled, which is generally defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also*

*Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. § 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 416.920(c). If the claimant is unable to show that his medical impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 416.920(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. § 416.920(e)& (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since September 18, 2006, the date of his SSI application (Step One). [AR 12] The ALJ further determined that Plaintiff had the severe impairment of a history of herniated disk at L5-S1 status-post lumbar microdiscectomy (Step Two), but that this impairment did not meet or

medically equal a listed impairment (Listing 1.04) deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 12] As a result, the ALJ went on to find that Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), with restrictions. [AR 12-13] Specifically, the ALJ determined that Plaintiff can perform light work

> except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting four hours in an eight hour workday up to 30 minutes at a time; standing five hours in an eight hour workday, up to 1 hour at a time; walking two hours in an eight hour workday, up to 15 minutes at a time; no use of foot controls with the right lower extremity; regular breaks (i.e. approximately every two hours in an eight hour workday); occasionally climbing ramps and stairs; never climbing ladders or scaffolds; no walking on rocky surfaces; occasionally balancing, stooping, kneeling, crouching, and crawling; occasional exposure to extreme cold, exposure to vibration coming through the lower extremities, to open, dangerous moving machinery; to working at unprotected heights, and driving as a requirement of the job. [AR 13]

The ALJ then determined that in light of Plaintiff's RFC, he could not perform his past relevant work as a roofer (Step Four). [AR 16] However, the ALJ did conclude that Plaintiff could perform a significant number of jobs in the national economy, including work as a food and beverage order clerk, telephone quotation clerk, photo machine operator, mail clerk, and office helper. [AR 16-17] As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the SSA. [AR 17]

## V. STANDARD OF REVIEW

This court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903,

905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).   Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, *supra*, 822 F.2d at 1521 (*citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d. 842 (1971)).  I may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).  With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

Plaintiff asserts that the ALJ erred when assessing the evidence and, as a result, the ALJ's decision was not supported by substantial evidence.  Plaintiff takes issue with various aspects of the ALJ's rulings.  I note that I must liberally construe *pro se* litigant filings.  *See Parker v. Astrue*, 298 Fed.Appx. 701, 701, 2008 WL 3974321 (10th Cir. 2008)(unpublished) (*citing Hall v. Bellmon,* 935 F.2d 1106, 1110 & n. 3 (10th Cir.1991)).

Step Three Determination:

Plaintiff's first argument is that the ALJ erred, at Step Three in the sequential process, when he concluded that Plaintiff's impairment[s] are not equivalent to a listed impairment (Listing 1.04) deemed to be so severe as to preclude substantial gainful employment. Plaintiff argues that his impairments are "Spinal Stenosis, Chronic Right S1 Radiculopathy, and a damaged Sciatic Nerve of the Gastrocnemius." Plaintiff argues that the ALJ erred when he found that his only impairment was "Herniated Nucleus Pulposis or Lumbar Spinal Stenosis" and, thus, improperly applied a criterion contained in Listing 1.04A (specifically, the straight leg test) to determine that Plaintiff did not meet or exceed the listing.

At Step Two, the ALJ determined that Plaintiff has the severe impairment of "history of herniated disk at L5-S1 status-post lumbar microdiskectomy." [AR 12] The ALJ found no other severe impairments. [AR 12] At Step Three, the ALJ considered Listing 1.04A for back impairments, and found that "there is no evidence of compromise of a nerve root or the spinal cord. In addition, no treating or examining physician has opined that any of [Plaintiff's] impairments meet or medically equal any listing." [AR 12] Thus the ALJ determined that Plaintiff's back impairment[s] did not meet the requirements of Listing 1.04A.

To the extent that Plaintiff contends that he also suffers from impairments defined as "Spinal Stenosis, Chronic Right S1 Radiculopathy, and a damaged Sciatic Nerve of the Gastrocnemius," such impairments would also be assessed under Listing 1.04 which addresses impairments that result in the compromise of the nerve root or spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. Such impairments include herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral

fracture, and other similar impairment. *Id.*

Listing 1.04A requires a disorder of the spine resulting in compromise of a nerve root manifested by:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

In this case, the ALJ held that Plaintiff does not have impairments equal in severity to Listing 1.04(A) because the medical evidence does not establish the necessary criteria - specifically, there is no evidence of compromise of a nerve root or the spinal cord. [AR 12] My review of the medial records in this case reveals the same. Thus, I find no error with his determination that Plaintiff impairment – whether defined as "Herniated Nucleus Pulposis or Lumbar Spinal Stenosis" and/or as "Spinal Stenosis, Chronic Right S1 Radiculopathy, and a damaged Sciatic Nerve of the Gastrocnemius" – did not rise to the level of presumed disability, in that such impairments would also be assessed under Listing 1.04A. To the extent that Plaintiff argues that the ALJ improperly relied upon results of a straight raised leg test to find that his impairment[s] do not meet the requirements of Listing 1.04A, my review of the ALJ's ruling does not reveal that the ALJ considered any such evidence.

RFC ASSESSMENT

Plaintiff next asserts that the ALJ erred when assessing his RFC by not considering Plaintiff's inability to sit, stand or walk for more than 30 minutes and three blocks, and also in failing to include Plaintiff's need to ambulate with a cane. In addition, Plaintiff argues that the ALJ erred in assessing his credibility related to his testimony regarding his RFC limitations and

in evaluating the medical source evidence.

When determining Plaintiff's RFC, the ALJ first indicated that the limitations alleged by Plaintiff "are not entirely credible based on the lack of treatment after November 2006, the lack of medication to control the alleged pain, and the claimant's previously report[ed] work abilities and his activities of daily living." [AR 14]  In so doing, the ALJ relied upon the following evidence in the record:  that Plaintiff stopped attending physical therapy although he was supposed to have more treatment visits; that he did not receive treatment in 2007 (except for the purpose of having a form filled out) or in 2008; his treatment history indicates that his pain has been controlled with and without medications; and his self-reported work abilities and activities of daily living have been "virtually unchanged since October 2006." [AR 14]

The ALJ specifically noted that Plaintiff's testimony regarding his need to lie down during the day was not credible as such limitation was not contained in his reported activities of daily living or any of his physical therapy or treatment notes. [AR 14]  The ALJ also rejected Plaintiff's claim that is unable to sit, stand or walk for prolonged periods of time. [AR 15]  In so doing, the ALJ relied upon Plaintiff's self reported work abilities prior to the hearing – in which he indicated he could lift more than 50 pounds, walk more than a mile, sit/stand more than 30 minutes, bend, knell and reach – and his reported activities of daily living – such as ability to dress, bathe, and groom, clean, do laundry, iron and perform household repairs. [AR 14]  The ALJ instead found that Plaintiff's self-report that "he could not sit or stand for more than a couple of hours without his sciatic nerves inflaming" is a "more accurate reflection of the claimant's work abilities in terms of his sitting and standing abilities." [AR 14]  The ALJ also noted that Plaintiff did not mention his alleged inability to sit/stand and walk to the physical

therapist, and his exercise regime – in physical therapy and at home – was inconsistent with such claims. [AR 15]  Finally, as to Plaintiff's allegation that he needed a cane, the ALJ noted that Plaintiff was prescribed a cane three to four weeks after his back surgery and, in September 29, 2006, he reported to the physical therapist that he was only using a cane for long ambulating. [AR 15]  However, there was no further mention of the cane in the physical therapy notes and "no evidence of a long term need or use of a cane."  Thus, the ALJ found that the use of a cane was not necessary for more than the few months following surgery. [AR 15]

The ALJ also addressed the limited medical opinions contained in the record.  He first addressed Ms. Holligan's opinion that "she believed the claimant's reports that he could not sit, stand or walk for any length of time, and needed to lie down at least every 15 minutes [of] every hour due to his back pain" and, thus, she opined that "he could not sustain a regular job." [AR 13]  The ALJ determined that Holligan's treatment notes did not support her conclusion as follows:

> On November 4, 2007, it was noted that [Holligan] had last seen the claimant in September 2006.  At the November 2007 treatment visit, the claimant reported doing okay.  He reported [that he] continued to have intermittent right lower extremity symptoms, but better with position changes.  He reported physical therapy did help.  Nurse Holligan's diagnosis was sciatica in the right lower extremity intermittent symptoms.  There was no complaint of needing to lie down, or problems with no prolong[ed] sitting, standing or walking.  [AR 13-14]

The ALJ acknowledged that a treatment record dated September 18, 2007 – which indicated a diagnosis of sciatica, failed back surgery – might have revealed "objective evidence of right lower extremity abnormalities, but the writing is illegible." [AR 14, 173]  Based on this evidence, I find no error in the ALJ's rejection of Holligan's "belief" in Plaintiff's asserted limitations, and her opinion that he could not sustain a regular job.  *See Nichols v. Astrue*, 341

Fed.Appx. 450, 2009 WL 2488156 (10th Cir. 2009)(finding that the ALJ properly gave little weight to a nurse-practitioner's opinion that claimant could stand and walk for only four hours, which was the only medical evidence suggesting such limitation)(not selected for publication).

Plaintiff also asserts that the ALJ improperly rejected the opinion of Jack Moore. The ALJ's order indicates that he considered Mr. Moore's October 2, 2006 opinion – stated on a Med-9 form that Plaintiff was disabled for 12 months or more due to chronic back pain, status-post August 16, 2006 surgery with no improvement, nerve damage and weakness in dorsiflexon – but concluded that it was entitled to no weight. The ALJ first noted that Mr. Moore is "not an acceptable medical source for purposes of diagnosing impairments." In addition, Moore failed to provide a function-by-function analysis of Plaintiff's abilities, his conclusory opinion of disability is "one left to the sole discretion of the commissioner," and the medical evidence does not support his decision. [AR 15] These reasons are supported by the record and are sufficient to reject Mr. Moore's opinion.

The ALJ did give "great weight" to the opinion of Dr. LoGalbo, as an orthopedist, who provided a work assessment for Plaintiff in consideration of his back impairment. The ALJ found that Dr. LoGalbo's assessment of Plaintiff's functional abilities was consistent with the medical evidence and Plaintiff's self-reported functioning. [AR 15-16] Dr. LoGalbo opined that Plaintiff could lift 50 pounds occasionally and 10 pounds frequently, carry 20 pounds occasionally and 10 pounds frequently. He further opined that: Plaintiff could sit six hours a day, up to three hours at a time; stand for four hours a day, up to two hours at a time; and walk three hours a day, up to one hour at a time. In addition, Dr. LoGalbo indicated that Plaintiff did not need a cane, had no limitations in his upper extremities of left foot controls, and no limitations in his vision or

hearing.  However, Dr. LoGalbo did conclude that Plaintiff was limited in his abilities to climb ladders, scaffolds and stairs, as well as stoop, kneel and crouch, etc.  In addition, he has some limitations in his environmental exposure such as extreme cold, vibrations, etc. [AR 15, AR 195-200]  The ALJ incorporated Dr. LoGalbo's opinions into Plaintiff's RFC work restrictions, except that the ALJ gave Plaintiff the "benefit of the doubt" and limited his lifting/carrying abilities of only 20 pounds occasionally and 10 pounds frequently, even though Plaintiff testified that he is able to lift 50 pounds occasionally. [AR 16]

I conclude that the ALJ properly weighed the medical opinions in the record and provided adequate support for the weight he gave to those opinions.  In addition, I find that the ALJ's RFC assessment was supported by substantial evidence in the record.

Accordingly,  IT IS ORDERED that the Commissioner's decision is AFFIRMED.

Dated:  September   1  , 2011 in Denver, Colorado.

                                      BY THE COURT:

                                        s/Lewis T. Babcock
                                      LEWIS T. BABCOCK, JUDGE